THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN RADEMACKER, Plaintiff in Error.

*Opinion filed December 16, 1925.*

CRIMINAL LAW—*what is sufficient to show assault with intent to rape—review.* In reviewing a prosecution for assault with intent to rape a girl fifteen years of age the Supreme Court will not reverse a judgment of conviction on the ground that the evidence does not show, beyond a reasonable doubt, that the defendant intended forcibly to accomplish his purpose, as it is not material that the offense was forcible and against the will of a girl under statutory age; and where the defense of an alibi has failed, the defendant may be convicted on the testimony of the prosecutrix as to what he said and did, corroborated by another witness as to the circumstances of the assault and identity of the defendant.

WRIT OF ERROR to the City Court of Pana; the Hon. JOHN W. PREIHS, Judge, presiding.

LOGAN G. GRIFFITH, and MCDAVID & MONROE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CARL H. PREIHS, State's Attorney, and VIRGIL L. BLANDING, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

John Rademacker was convicted in the city court of Pana, Christian county, under an indictment charging him with assaulting Lena Beason, a female person of the age of fifteen years, with intent to ravish and carnally know her, by force and against her will. He was found guilty by the jury, and after overruling a motion for a new trial he was sentenced to the penitentiary for not less than one nor more than fourteen years. This writ of error is sued out to review the judgment.

The errors assigned are, that the verdict is contrary to the law and the evidence, that the court erred in giving instructions on behalf of the People, and that the defendant was not properly defended on the trial.

The alleged offense was committed on the night of January 1, 1925. Lena Beason, a girl fifteen years of age, was staying at the house of an aunt in the northwest part of the city of Pana. She testified she was fifteen years old the fourth day of last January. On the night of January 1 she attended a dance at Roley's Hall, in Pana, and left the dance with Harry Bennefield for her home between one and two o'clock. They went from the hall west to Locust street, then turned north on Locust street to Washington street and then turned on Washington street across the Illinois Central railroad track. When they were near the track defendant came up and said, "Hands up!" Bennefield did not at first put up his hands and was again ordered to put them up, and did so. Defendant then told him to turn around and go back to town, and said to witness, "Come on, Lena." Witness started to run, and defendant called her to stop and asked her what she wanted to go with those sissy boys for. He walked with her about three blocks and then pushed her up against a fence and said, "You never gave up before but you are going to give up now." He put his hands on her breast and started to put them on her limbs. She screamed and ran. Orville Bryson came up and said,

"Come on; I will take you home and see that he don't bother you." They started, and on their way defendant overtook and bumped against them and said, "We never called you in." Bryson said something and defendant hit him. Witness ran to her aunt's. She had known defendant about three years but had never been out with him. She testified that she left the dance between 1:00 and 1:30 o'clock. It had ended when she left. She saw defendant at the dance but did not dance with him. She told her aunt about the assault.

Orville Bryson testified he saw defendant the night of the dance, on West Washington street. It was between twenty minutes after 1:00 and 1:30 o'clock. While the witness was on the south side of Washington street he heard someone calling for help and went across to where Lena Beason was, and she asked him to take her home. They started west on Washington street and had gone about fifty feet when defendant caught up and bumped against him and the girl, and witness asked him what he meant by such acts. Defendant took offense and slugged witness in the jaw, and Lena Beason ran down the street, west. Witness testified he knew defendant by sight before that time but did not know his name. There was an arc light half a block from where they were, and witness was very close to defendant. Witness did not see what he did to the girl.

Defendant testified in his own behalf and denied Lena Beason's testimony that he had assaulted her, denied being with her that night, and denied being at the place where she testified he assaulted her. He was at the dance at Roley's Hall, but testified the dance stopped at 12:30 o'clock or later, and after the dance he went to Rice's restaurant, arriving there in the neighborhood of one o'clock directly from the dance hall. He testified he never saw Lena Beason at the dance. He named Johnnie Maton, John Schneider, Alfred Koontz and the State's attorney as being at Rice's restaurant when he was there.

Alfred Koontz testified to seeing defendant at Rice's restaurant about one o'clock, and he and defendant left the restaurant together a little after two o'clock. Some other witnesses testified to seeing defendant at Rice's restaurant about one o'clock, and that the State's attorney was there that night also. In rebuttal, Dr. Littlejohn and the State's attorney's wife testified the State's attorney was at home in bed that night, sick with the "flu."

It would seem the witnesses for defendant were mistaken about the night they saw defendant at Rice's restaurant about one o'clock, for they testified they saw the State's attorney there the same night, but it is apparent he was not there the night of January 1, for he was sick in bed. The attempted alibi, therefore, is not entitled to very great weight when that fact is considered in connection with the hour the witnesses saw defendant at Rice's restaurant. Defendant was at the dance at Roley's Hall, and that dance did not break up until 12:30 o'clock or later. The jury were warranted in concluding from the evidence that defendant was at the place where the prosecuting witness alleged he committed the assault upon her, and we cannot say they were not warranted in believing that he did what the witness testified to.

Counsel for defendant insist what the prosecuting witness testified defendant did was not sufficient to indicate an intention on his part to force a compliance with his desire regardless of any resistance of the victim; that his acts were as much susceptible of an indication that he sought to accomplish his purpose by persuasion. The intention of the defendant is to be determined from a consideration of what he said and what he did. The prosecuting witness was just about fifteen years old at the time of the alleged crime. It would have been rape if defendant had succeeded in having intercourse with her with her consent. In *Porter* v. *People,* 158 Ill. 370, the indictment, as does the indictment here, charged the defendant with an assault to commit rape

upon a girl fourteen years of age. The court said that under these circumstances it was immaterial whether the offense was forcible and against the will of the female or not, as by the statute the consummated offense would have been rape whether committed with or without her consent. The jury believed the testimony of the prosecuting witness that defendant said and did the things she testified to, and a reviewing court could not reverse the judgment even if it were necessary that the evidence should be sufficient, beyond a reasonable doubt, to prove that defendant intended forcibly to accomplish his purpose against the will of the victim. That she cried out for help and that the witness Bryson went to her rescue and saw defendant there, who a little later bumped into him and the prosecuting witness and struck Bryson, was testified to by Bryson. Defendant's counsel question the identification of defendant by Bryson, but we think there is no merit in that contention. The judgment cannot be reversed on the ground that it is contrary to the law and the evidence.

The court gave three instructions on behalf of the People and twelve on behalf of defendant. The three instructions given on behalf of the People were on the subject of reasonable doubt. One, at least, of them has been severely criticised by this court as being meaningless in *People* v. *Andrae,* 295 Ill. 445. Another one of them is not strictly accurate, but considered in connection with the twelve instructions given for the defendant the jury were fully instructed, and none of the instructions given for the People could possibly have been misleading to the jury.

The complaint that defendant was not properly defended is not sustained by the record.

The judgment of the city court is affirmed.

*Judgment affirmed.*